UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ALEXIS ALEX and NICOLETTE PRIETO,** **individually and on behalf of all others** **similarly situated,** | ‖ | |
| **Plaintiffs,** | ‖ | **CIVIL NO. SA-13-CA-728-OLG** |
| **v.** | ‖ | |
| **KHG OF SAN ANTONIO, L.L.C. dba** **TIFFANY'S CABARET,** | ‖ | |
| **Defendant.** | ‖ | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

TO:   **Honorable Orlando L. Garcia**
      **United States District Judge**

Pursuant to the Order of referral in the above-styled and numbered cause of action to the undersigned United States Magistrate Judge[1] and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b) and rule 1 of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following report is submitted for your review and consideration.

**I.  JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**II.  PROCEDURAL HISTORY and ALLEGATIONS**

On August 14, 2013, plaintiffs Alexis Alex and Nicolette Prieto (collectively, "plaintiffs") initiated this proceeding by filing their original complaint and demand for jury trial

---

[1] Docket no. 34 (Apr. 29, 2014).

against defendant KHG of San Antonio, LLC doing business as Tiffany's Cabaret ("defendant").[2] The original complaint alleges defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, by "failing to compensate the Plaintiffs for all hours worked."[3] Specifically, the original complaint alleges plaintiffs "work more than forty hours a week on average," but plaintiffs are paid "for well below half their hours worked and no pay at the premium hourly rate for overtime hours worked over forty in a workweek."[4]  Plaintiffs further assert defendant "misappropriated Plaintiffs' and Class Members' tips" because defendant did not take a tip credit against plaintiffs' hourly wages, and defendant required plaintiffs to participate in an "invalid" tip pool by sharing "tips with employees who do [not] customarily and regularly receive tips."[5]  Plaintiffs assert three causes of action against defendant: "FLSA minimum wage violation," "FLSA overtime violation," and "FLSA misappropriation of tips violation."[6]  Plaintiffs seek declaratory relief and monetary damages for defendant's minimum wage, overtime, and tip violations,[7] as well as costs of court, reasonable attorney's fees, and "an order requiring Defendant to correct its pay practices going forward."[8]

---

[2]  Docket no. 1.

[3]  Id. at 1, ¶ 2.

[4]  Id.

[5]  Id. at 2, ¶ 3.

[6]  Id. at 5-6 (citing 29 U.S.C. §§ 206, 207 and 29 C.F.R. 531.52).  Plaintiffs also cite to "section 3(m)" in support of their third claim for misappropriation of tips.  Because that claim refers to the tip credit provision under the FLSA, for purposes of this report, the Court will assume plaintiffs are referring to 29 U.S.C. § 203(m).

[7]  Id. at 8, ¶¶ 46-50.

[8]  Id. at 8-9, ¶ 52, "Prayer for Relief."

Summons issued for defendant the next day.[9]  On September 9, 2013, defendant filed an original answer, generally denying all material allegations and asserting eight affirmative defenses.[10]  On November 20, 2013, the District Judge entered a scheduling order, providing, among other deadlines, that: motions to amend or supplement pleadings or to join additional parties must be filed by December 2, 2013; discovery must be completed by July 25, 2014; and dispositive motions must be filed by August 12, 2014.[11]  The scheduling order also sets a final pretrial conference for November 5, 2014, with jury selection and trial to begin on November 17, 2014.[12]

On December 5, 2013, plaintiffs filed a "motion to strike defendant's affirmative defenses,"[13] and a motion for leave to file a "first amended collective action complaint," seeking leave to file a proposed first amended complaint adding two defendants.[14]  On December 11, 2013, defendant responded to plaintiffs' motion to file a first amended collective action complaint, arguing "plaintiffs' motion for leave is untimely and fails to establish good cause for modifying the court's scheduling order."[15]  The next day, defendant responded to plaintiffs' motion to strike defendant's affirmative defenses, arguing plaintiffs' motion to strike all of

---

[9]  Docket nos. 2, 3.  See docket no. 4 (summons returned executed, dated Aug. 23, 2013).

[10]  Docket no. 8.

[11]  Docket no. 16.

[12]  Id.

[13]  Docket no. 18.

[14]  Docket no. 19.

[15]  Docket no. 20 at 2.

defendant's affirmative defenses is untimely, "overreaching in scope," and the heightened

pleading standard for affirmative defenses has not been adopted in the Fifth Circuit.[16]   On

December 13, 2013, the District Judge denied plaintiffs' motion to strike defendant's affirmative

defenses as untimely.[17]   The same day, the District Judge denied plaintiffs' motion for leave to

file a first amended collective action complaint.[18]

On January 13, 2014, defendant filed an unopposed motion to extend the Court's

scheduling order deadline to designate expert witnesses and serve materials required by Federal

Rule of Civil Procedure 24(a)(2)(B).[19]   On January 14, 2014, the District Judge granted

defendant's unopposed motion, extending defendant's deadline to designate expert witnesses and

serve materials required by Rule 26 to February 6, 2014.[20]   On April 2, 2014, the District Judge

granted the parties' joint motion to modify the Court's scheduling order, extending the deadline

to complete mediation to May 14, 2014.[21]

On April 28, 2014, plaintiffs filed a motion for partial summary judgment with twelve

exhibits.[22]   The same day, plaintiffs filed a motion for leave to file sealed documents in support

---

[16]   Docket no. 21.

[17]   Docket no. 22.

[18]   Docket no. 23.

[19]   Docket no. 25.

[20]   Docket no. 27.

[21]   Docket nos. 29, 30.

[22]   Docket no. 32.   The exhibits are: exhibit 1, counsel for plaintiffs, Ricardo Prieto's affidavit listing the following attached exhibits; exhibit A, selected excerpts from the April 8, 2014 deposition of Alexis Alex ("Alex Dep."); exhibit B, selected excerpts from the April 9, 2014 deposition of Nicolette Prieto ("Prieto Dep."); exhibit C, selected excerpts from the April

of their motion for summary judgment.[23]  On May 12, 2014, plaintiffs filed a "motion for leave to

file plaintiffs' first amended collective action complaint" and "plaintiff's opposed filing of opt-in

plaintiff's consent to join this action," attaching three exhibits in support.[24]  On May 16, 2014,

defendant filed a response to plaintiffs' motion for leave to file a first amended collective action

---

10, 2014 deposition of James Condrin, defendant's corporate representative ("Condrin Dep.");
exhibit D, selected excerpts from the April 10, 2014 deposition of John Anderson, defendant's
corporate representative ("Anderson Dep."); exhibit E, selected excerpts from the April 10, 2014
deposition of Timothy Eidson, president of KHG of San Antonio, LLC ("Eidson Dep."); exhibit
F, plaintiffs' W-2 forms, filed under seal (see docket no. 33 and infra); exhibit G, print-out of
Reich v. Priba Corp., 890 F.Supp. 586 (N.D. Tex. 1995); exhibit H, print-out of Hart v. Rick's
Cabaret Int'l., Inc., No. 09-civ-3043, 2013 WL 4822199 (S.D.N.Y. Sept. 10, 2013); exhibit I,
print-out of Reich v. ABC/York-Estes Corp., No. 91-C-6265, 1997 WL 264379 (N.D. Ill. May
12, 1997); exhibit J, print-out of Thornton v. Crazy Horse, Inc., No. 3:06-cv-251, 2012 WL
2175753 (D. Alaska June 14, 2013); exhibit K, print-out of a February 18, 2014 article from
www.mysanantonio.com on 2013 total alcohol sales for San Antonio-area establishments; exhibit
L, list of all exotic dancers employed by defendant during the three years prior to the date of
filing this lawsuit, filed under seal (see docket no. 33 and infra); exhibit M, defendant's
objections and responses to plaintiffs' first request for production of documents.
    The Court notes that, although Mr. Prieto's affidavit lists an exhibit N, the CM/ECF
submission does not include a submission for a document identified to be exhibit N nor do the
exhibits submitted with the motion for summary judgment include a document titled
"Defendant's Objections and Responses to Plaintiffs' First Set of Interrogatories." See docket
no. 32, attached exhibits.

    [23]  Docket no. 33 (motion to file under seal exhibit F and exhibit L in support of
plaintiffs' motion for summary judgment).  Plaintiffs' motion for leave to file sealed exhibits in
support of their motion for summary judgment is **granted** and plaintiffs' exhibits F and L are
**sealed**.

    [24]  Docket no. 37.  The exhibits are: exhibit A, plaintiffs' proposed first amended
collective action complaint; exhibit B, consent of potential opt-in plaintiff Veronica M. Ayala,
dated May 7, 2014; exhibit C, selected excerpts from the April 10, 2014 deposition of James
Condrin, defendant's corporate representative ("Condrin Dep.").  See docket nos. 38, 46, 49, 53,
56, 58, 60, 62, 65, 67 (titled as supplements to plaintiffs' motion to file first amended collective
action complaint, the supplements are amended proposed orders adding the names of potential
opt-in plaintiffs).

complaint.[25]  On May 20, 2014, plaintiffs filed their reply in support of their motion for leave to file their first amended collective action complaint.[26]  On May 23, 2014, defendant responded to plaintiffs' motion for partial summary judgment, attaching eight exhibits.[27]  On May 30, 2014, plaintiffs filed a reply in support of their motion for partial summary judgment, and attached two exhibits.[28]

The District Judge referred the case to the undersigned on April 29, 2014, for pretrial management.[29]  Plaintiffs' motion for partial summary judgment, plaintiffs' motion to file their first amended collective action complaint and opt-in plaintiffs' consent,[30] and the related

---

[25]  Docket no. 45.

[26]  Docket no. 48.

[27]  Docket no. 55.  The exhibits are: exhibit 1, selected excerpts from the April 10, 2014 deposition of John Anderson, defendant's corporate representative ("Anderson Dep."); exhibit 2, copies of Alexis Alex's paycheck stubs, dating from Aug. 5, 2012; exhibit 3, selected excerpts from the April 10, 2014 deposition of James Condrin, defendant's corporate representative ("Condrin Dep."); exhibit 4, selected excerpts from the April 10, 2014 deposition of Timothy Eidson, president of KHG of San Antonio, LLC ("Eidson Dep."); exhibit 5, selected excerpts from the April 8, 2014 deposition of Alexis Alex ("Alex Dep."); exhibit 6, selected excerpts from the April 9, 2014 deposition of Nicolette Prieto ("Prieto Dep."); exhibit 7, Prieto's answers and objections to defendant's first set of interrogatories; exhibit 8, Alex's answers and objections to defendant's first set of interrogatories.

[28]  Docket no. 64, and attached exhibit A (supplemental affidavit of Ricardo Prieto) and exhibit B (excerpts from the April 10, 2014 deposition of John Anderson ("Anderson Dep.").

[29]  Docket no. 34.

[30]  At the time plaintiffs filed their motion for leave, only one opt-in plaintiff had consented to join the action, see docket no. 37, exhibit B, consent of Veronica M. Ayala, dated May 7, 2014.  Since then, plaintiffs have filed thirteen additional consent forms for opt-in plaintiffs, see docket nos. 39, 40, 41, 47, 50, 54, 57, 59, 61, 63, 66, 68.

pleadings are addressed in this report.[31]

### III.  ISSUES

1.      Whether plaintiffs should be granted leave to file a first amended complaint and join additional opt-in plaintiffs.

2.      Whether there is a genuine issue of material fact to preclude entry of judgment as a matter of law on plaintiffs' claims on behalf of defendants.

### IV.  STANDARDS

#### A.      Amendment of Complaint

Rule 16(b) of the Federal Rules of Civil Procedure, which governs pretrial conferences, scheduling, and management, applies when a request to file an amended complaint is made after the relevant scheduling order deadline has expired.[32]  The Fifth Circuit has explained that "*[o]nly upon* movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[33]

Rule 16(b) provides, in part, that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge[.]"[34]  The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the

---

[31]  Plaintiffs' motion for leave to amend is a nondispositive motion.  But, because the Court will be relying on the same procedural history and the disposition of the motion can be considered to be related to the motion for summary judgment, which was filed fourteen days before the filing of the motion for leave, this report addresses the motion for leave is in this report along with plaintiffs' motion for summary judgment.

[32]  Hawthorne Land Co. v. Occidental Chem. Corp., 431 F.3d 221, 227 (5th Cir. 2005), cert. denied, 549 U.S. 811, 127 S.Ct. 48 (2006); S&W Enter., L.L.C. v. Southtrust Bank of Al., NA, 315 F.3d 533, 536 (5th Cir. 2003).

[33]  Id. (emphasis added).

[34]  Fed. R. Civ. P. 16(b).

diligence of the party needing the extension."[35]  The absence of prejudice to the nonmovant or

the ability to address prejudice through a further continuance in the dispositive motion deadline

or trial are generally insufficient to demonstrate "good cause."[36]

The Fifth Circuit has explained that "[o]nly upon movant's demonstration of good cause

to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district

court's decision to grant or deny leave."[37]  Rule 15(a)(1) provides, in sum, that a "party may

amend its pleading once as a matter of course within" 21 days after serving it or, "if the pleading

is one to which a responsive pleading is required, within 21 days after service of a responsive

pleading or 21 days after service of a Rule 12(b), (e), or (f), motion, whichever is earlier."[38]  Rule

15(a)(2) addresses all other amendments.[39]  Although Rule 15(a)(2) provides that leave shall be

freely given "when justice so requires,"[40] leave is not automatic.[41]  Whether to grant leave "lies

---

[35]  S&W Enter., 315 F.3d at 536 (citation omitted).

[36]  Bakner v. Xerox Corp. Employee Stock Ownership Plan, No. SA-98-CA-0230-OG, 2000 WL 33348191, at * 14 (W.D. Tex. Aug. 28, 2000).

[37]  Hawthorne Land Co., 431 F.3d at 227 (quoting S&W Enter., 315 F.3d at 536 ).

[38]  FED. R. CIV. P. 15(a)(1)(A), (B).  The Advisory Committee Notes state that the 21-day periods are not cumulative.  For example, "if a responsive pleading is served after one of the designated motions is served, there is no new 21-day period."  Advisory Committee Notes on FED. R. CIV. P. 15 (2009 Amendments).

[39]  Rule 15(a)(2) provides:
In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.
FED. R. CIV. P. 15(a)(2).

[40]  FED. R. CIV. P. 15(a)(2).

[41]  In re Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996), cert. denied, 519 U.S. 1057, 117 S.Ct. 686 (1997).  See Bakner, 2000 WL 33348191, at * 14 (citing Geiserman v. McDonald, 893 F.32d 787, 790 (5th Cir. 1990)).

within the sound discretion of the district court."[42]  "In exercising its discretion, the Court may

consider such factors as undue delay, bad faith or dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party, and futility of the amendment."[43]

### B.    Summary Judgment

The standard to be applied in deciding a motion for summary judgment is set forth in

Federal Rule of Civil Procedure 56, which provides in pertinent part as follows:

> The judgment sought should be rendered if the pleadings, the discovery and
> disclosure materials on file, and any affidavits show that there is no genuine issue
> as to any material fact and that the movant is entitled to judgment as a matter of
> law.[44]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[45]

A fact is material if it might affect the outcome of the lawsuit under the governing law.[46]  A

dispute about a material fact is genuine if the evidence is such that a reasonable jury could return

---

[42] Bakner, 2000 WL 33348191, at * 14 (citing Louisiana v. Litton Mortg. Co., 50 F.3d
1298, 1302-03 (5th Cir. 1995)).

[43] Id. (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962).  Southmark
Corp., 88 F.3d 314-15).

[44] FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548,
2552 (1986).

[45] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986).

[46] Anderson, 477 U.S. at 248; 106 S.Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616
(5th Cir. 1994).

a verdict for the nonmoving party.[47]   Therefore, summary judgment is proper if, under governing

laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could

resolve a factual issue in favor of either party, summary judgment should not be granted.[48]

The movant on a summary judgment motion bears the initial burden of providing the

court with a legal basis for its motion and identifying those portions of the record which it alleges

demonstrate the absence of a genuine issue of material fact.[49]   The burden then shifts to the party

opposing the motion to present affirmative evidence in order to defeat a properly supported

motion for summary judgment.[50]   All facts and inferences drawn from those facts must be viewed

in the light favorable to the party resisting the motion for summary judgment.[51]   Thus, summary

---

[47]   Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[48]   Anderson, 477 U.S. at 249, 106 S.Ct. at 2510.

[49]   Celotex, 477 U.S. at 323, 106 S.Ct. at 2552-53.

[50]   Anderson, 477 U.S. at 257, 106 S.Ct. at 2514-15.

[51]   Scott v. Harris, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774 (2007); Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).  The Supreme Court explained in Scott that:
> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to [the] facts.  As we have emphasized,  "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmonving party, there is no 'genuine issue for trial.'"  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

550 U.S. at 380, 127 S.Ct. at 1776 (emphasis in original) (quoting FED. R. CIV. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356

judgment motions permit the Court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[52]

The movant may satisfy the burden to show the "absence of a genuine issue of material fact by pointing out that the record contains no [evidence to] support for the non-moving party's claim."[53]  If the non-movant cannot provide some evidence to support its claim, summary judgment is appropriate.[54]

## V.  ANALYSIS

**A.    Plaintiff's Motion for Leave to File First Amended Complaint and Opt-In Plaintiffs' Consent to Join**

**1.    summary of arguments**

In their motion for leave to file their first amended collective action complaint, plaintiffs contend, "[i]n light of Plaintiffs' and Defendant's depositions," good cause exists to allow untimely amendment.[55]  Specifically, plaintiffs assert the amendment will "clarify how they were compensated," "dates of employment and the number of hours worked," and defendant's system for tracking hours worked, which plaintiffs allege violates the FLSA.[56]  Plaintiffs further assert

---

(1986); <u>Anderson</u>, 477 U.S. at 247-48, 106 S.Ct. at 2510).

[52]  <u>See</u> <u>Fields v. City of South Houston, Tex.</u>, 922 F.2d 1183, 1187 (5th Cir. 1991).

[53]  <u>Stahl v. Novartis Pharmaceuticals Corp.</u>, 283 F.3d 254, 263 (5th Cir.), <u>cert. denied</u>, 537 U.S. 824, 123 S.Ct. 111 (2002).

[54]  <u>Id.</u>

[55]  Docket no. 37 at 1.

[56]  <u>Id.</u> at 4.

the amendment will "streamline the allegations regarding tip misappropriation and the facts to support their allegations regarding Defendant's lack of a 'good faith' defense and willfulness."[57] Plaintiffs contend their "core allegations remain the same," as do "Defendant's defenses."[58] Regarding their request to join additional parties, plaintiffs contend joinder "should be allowed to effectuate the liberal application of the FLSA," "the opt-in plaintiff meets the permissive joinder requirements of" Rule 20(a)(2), and "the opt-in plaintiff's claims are not brought with undue delay or dilatory motive."[59]  Plaintiffs assert "'good cause' is not a necessary requirement for late opt-in plaintiffs to join," instead, the Court should apply the rationale of <u>Hoffman-LaRoche, Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989), to grant plaintiffs leave to add the opt-in plaintiff.[60]  In support of their motion, plaintiffs submit the proposed first amended complaint, the consent form of a potential opt-in plaintiff, and portions of the deposition of James Condrin.[61]

Plaintiffs' first amended complaint names one defendant, KHG of San Antonio, L.L.C. doing business as Tiffany's Cabaret ("defendant").[62]  The first amended complaint asserts four causes of action.  In addition to the alleged minium wage, overtime, and tip misappropriation

---

[57]  <u>Id.</u>

[58]  <u>Id.</u>

[59]  <u>Id.</u> at 5-7.

[60]  <u>Id.</u> at 7.

[61]  Docket no. 37, exhibit A, proposed first amended collective action complaint ("proposed first amended complaint"); exhibit B, May 7, 2014 consent of potential opt-in plaintiff Veronica M. Ayala; exhibit C, selected excerpts from the April 10, 2014 deposition of James Condrin, defendant's corporate representative ("Condrin Dep.")

[62]  <u>Id.</u>, exhibit A, proposed first amended complaint at 1.

violations, the new complaint seeks to assert a fourth cause of action for "credit card fee

violation."[63]   Specifically, the newly asserted cause of action alleges "Defendant deducts credit

card processing fees from Plaintiffs' tips when paid by club patrons via credit card," and "the

deductions are not reasonably calculated to cover the credit card processing fees, but were in fact

more than the actual amount."[64]   In support of the newly added fourth claim, plaintiffs do not cite

to any federal statute, instead citing 29 C.F.R. §§ 531.3(d)(2) and 531.32(c).[65]

Defendant raises three main arguments in response.  First, defendant argues plaintiffs'

motion for leave, filed over five months after the scheduling order deadline of December 2, 2013,

is untimely.[66]  Second, defendant argues plaintiffs' motion for leave fails to establish good cause

for modifying the Court's scheduling order.[67]  Specifically, defendant asserts plaintiffs "offer no

explanation for the need for, or how, in fact, they have 'streamlined' their allegations," when

plaintiffs have added a new theory of recovery; and plaintiffs have not explained why the

proposed new theory of recovery—"credit card fee violation"—"could not have been asserted or

added" prior to the scheduling order deadline for amending pleadings.[68]  Further, defendant

argues it will be prejudiced by plaintiffs' untimely proposed amended complaint, because the

proposed amended complaint will require defendant to re-depose plaintiffs on the new

---

[63]   Id. at 9-10.

[64]   Id. at 10.

[65]   Id.

[66]   Docket no. 45 at 2.

[67]   Id. at 2-4.

[68]   Id. at 3.

allegations contained in their new claim, and the discovery period is scheduled to close on July 25, 2014.[69]  Third, defendant contends "Plaintiffs' motion for leave to file a 'consent form' signed by" the opt-in plaintiff should be denied as untimely.[70]  Specifically, defendant asserts plaintiffs have not filed a motion seeking collective action certification, and a motion for conditional certification should "be filed sufficiently early in the life of the civil action, and without 'undue delay.'"[71]

Plaintiffs filed a reply in support of their motion, asserting six main arguments.[72]  First, plaintiffs assert their "core allegations remain the same."[73]  Second, plaintiffs assert their claim of "credit card fee violation"—Count Four in their proposed first amended complaint—is recoverable under the FLSA, specifically, 29 U.S.C. §203(m).[74]  Third, plaintiffs argue defendant will suffer no prejudice because defendant "agreed to present Tiffany's owner, Mr. Timothy Eidson, for deposition" on June 5, 2014, subject to the understanding Mr. Eidson would be questioned "on the credit card fee issue."[75]  Further, plaintiffs assert defendant will suffer no prejudice because plaintiffs "propounded written discovery on May 12, 2014 regarding the credit

_____

[69]  Id. at 4.

[70]  Id. at 4-5.

[71]  Id. at 5.

[72]  Docket no. 48.

[73]  Id. at 1.

[74]  Id. at 2-3.

[75]  Id. at 3.

14

card issue."[76]  Fourth, plaintiffs contend the opt-in plaintiffs consent "to join this action should be allowed to effectuate the liberal application of the FLSA."[77]  Fifth, plaintiffs argue "allowing the opt-in plaintiffs to join this action makes sense because their claims against Defendant arise from the same transactions or occurrences" and "there are common questions of law and fact."[78]  Sixth, plaintiffs assert "[t]he opt-in Plaintiffs must submit a consent form to join this action irrespective of whether or not the case is conditionally certified."[79]  Finally, plaintiffs ask for the extension of the scheduling order's December 2, 2013 deadline to add additional parties.[80]

### 2.    analysis

Plaintiffs are seeking to re-open expired deadlines in the November 20, 2013 scheduling order to file a first amended complaint and add additional parties.  Rule 16(b) governs pretrial conferences, scheduling, and management, and applies when, as here, a request to amend pleadings is made after the scheduling order deadline has expired.[81]  Rule 16(b)(4) permits

---

[76] Id.

[77] Id.

[78] Id.

[79] Id. at 4.

[80] Id. at 5.

[81] Hawthorne Land Co. v. Occidental Chem. Corp., 431 F.3d 221, 227 (5th Cir. 2005), cert. denied, __ U.S. __, 127 S.Ct. 48 (2006); S&W Enter., L.L.C. v. Southtrust Bank of Al., NA, 315 F.3d 533, 536 (5th Cir. 2003).  Rule 16(b) provides, in part, that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge[.]"  FED. R. CIV. P. 16(b).  The "good cause" standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."  S&W Enter., 315 F.3d at 536 (citation omitted).  The absence of prejudice to the nonmovant or the ability to address prejudice through a further continuance in the dispositive motion deadline or trial are generally insufficient to demonstrate "good cause."  Bakner v. Xerox Corp. Employee

amendment of a trial court's scheduling order "only for good cause and with the judge's consent."[82]  "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[83]  In determining good cause for amending a scheduling order, the Court considers four factors:  "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[84]

   With respect to an explanation for the failure to timely move to amend, the first factor, plaintiffs assert their amended complaint clarifies facts discovered in depositions "which took place just last month," and the first-opt-in plaintiff signed her consent form "less than a week" before plaintiffs filed the motion for leave.[85]  Plaintiffs have not explained why the amendments—specifically, the newly added claim of credit card fee violation—were unknown before the scheduling deadline and what prevented plaintiffs from moving for an extension prior to the deadline.  As to the first factor, plaintiffs provide no explanation for why the claim of "credit card fee violation" in the proposed first amended complaint could not be made before depositions conducted last month, why they waited at least one month after taking depositions to

---

Stock Ownership Plan, No. SA-98-CA-0230-OG, 2000 WL 33348191, at * 14 (W.D. Tex. Aug. 28, 2000).

[82]  FED. R. CIV. P. 16(b)(4).

[83]  Sw. Bell Tel., 346 F.3d at 546 (quoting S&W Enters., 315 F.3d at 535).

[84]  Id.

[85]  Docket no. 37 at 4, 7.

move for leave to amend, why they could not join additional parties before the December 2 deadline or why they failed to file a motion to extend the deadline to join additional parties before the deadline expired.

       With respect to the second factor, the importance of the amended complaint and additional parties, plaintiffs assert the proposed first amended complaint clarifies "their pleadings in light of discovery conducted to date."[86]  Plaintiffs argue they seek leave to amend to "streamline allegations as this case nears trial," and the clarification of their allegations is necessary to fully litigate their FLSA claims and defendant's defenses.[87]  Specifically, plaintiffs assert "[n]one of these allegations are new," "[t]hey are simply pled with more substance as the parties approach trial."[88]  But, plaintiffs' proposed first amended complaint asserts a new claim. Plaintiffs do not explain how a newly asserted claim streamlines allegations in advance of trial. Further, with respect to the newly added claim of credit card fee violations, plaintiffs' proposed first amended complaint does not cite to any federal statute or specific section of the FLSA. Instead, the claim for credit card fee violation appears to assert a violation of 29 C.F.R. §§ 531.3(d)(2) and 531.32(c).  Although plaintiffs have offered no argument or authority for holding defendant liable under a federal regulation, plaintiffs assert, in their reply in support of their motion for leave to amend, that the claim is brought under the FLSA, 29 U.S.C. § 203(m).  With respect to the proposed first amended complaint, plaintiffs have not demonstrated the importance of the requested amendments.

---

[86]  Docket no. 37 at 5.

[87]  Id.

[88]  Docket no. 48 at 2.

With respect to the importance of permitting the opt-in plaintiffs to untimely join the action, plaintiffs assert they should be permitted to file opt-in plaintiffs' consent to join this action "to effectuate the liberal application of the FLSA," and further assert the Court should apply the rationale of Hoffman-LaRoche, Inc. v. Sperling,[89] rather than the "good cause" standard under Rule 16.  In Hoffman-LaRoche, Inc. v. Sperling, the United States Supreme Court stated the collective action mechanism of the FLSA

> must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure.[90]

Thus, Sperling acknowledges the Court has the requisite procedural authority to manage the process of joining additional parties according to the provisions of Rule 15 and Rule 16.  It does not hold that Rule 16 should not be applied when amendment is sought after the expiration of the relevant scheduling order deadline.

Here, the District Judge entered a scheduling order on November 20, 2013, setting a December 2, 2013 deadline to join additional parties.[91]  Plaintiffs do not contend the November 20 scheduling order is not "orderly, sensible" or otherwise is contrary to any applicable federal statutes or procedural rules.  Plaintiffs did not timely move to modify or amend the deadline to join additional parties, and they provide no explanation for the lengthy delay in moving to extend the expired scheduling deadline to join additional parties.  Indeed, on December 13, 2013, the

---

[89]  493 U.S. 165, 110 S.Ct. 482 (1989).

[90]  Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. at 170, 110 S.Ct. at 486.

[91]  See docket no. 16.

18

Court denied plaintiffs' motion for leave to file a first amended collective action complaint (which sought to add new party defendants) based in part on the motion being filed after the expiration of the deadline to file motions for leave to amend and plaintiffs' failure to show good cause.[92]  Yet, despite the express notice of the "good cause" requirement, it was not until approximately five months later that plaintiffs filed a second motion for leave to file a first amended collective action complaint to add the opt-in plaintiffs.  Plaintiffs' central explanation appears to be that they are not required to add opt-in plaintiffs to proceed—an explanation that would appear to concede plaintiffs are not harmed by the denial of leave to amend.  Relatedly, plaintiffs have not explained why they did not seek court-approval for any written opt-in notice provided to others or seek a specialized scheduling order that might provide for notice and discovery regarding later-added plaintiffs.  Plaintiffs have not demonstrated due diligence in joining opt-in plaintiffs or evidence to show defendant has been notified about the potential opt-in plaintiffs apart from the supplements recently filed in the record.  Whether under the rationale of Sperling or Rule 16, plaintiffs have not demonstrated the importance of allowing additional plaintiffs to join this action over five months after the expiration of the deadline to seek to file motions to amend.

With respect to the third factor, the potential prejudice that might be caused by amending or reopening the expired scheduling deadline, defendant asserts the new claim in the proposed first amended complaint will require defendant's counsel to re-depose plaintiffs on the new

---

[92]  Docket no. 23 at 1 ("for the reasons set for in Defendant's response in opposition, Plaintiffs' Motion be and is hereby DENIED.").

allegations and the discovery period is scheduled to close on July 25, 2014.[93]  Plaintiffs counter

that defendant will not be prejudiced because: defendants agreed to a June 5, 2014, deposition of

Timothy Eidson, owner of Tiffany's Cabaret, understanding Mr. Eidson would be questioned on

the proposed new claim for credit card fee violation; and plaintiffs provided written discovery of

the claim of credit card fee violation on May 12, 2014.  Plaintiffs do not address any potential

prejudice from joining additional parties within two months of the discovery deadline.  The case

was filed on August 14, 2014; the scheduling order was entered more than five months ago;

discovery is currently set to end on July 25, 2014; and defendant would have to respond to newly

alleged facts, conduct necessary discovery, and possibly designate a new expert.  The amendment

of the complaint and the joinder of additional parties would be prejudicial to defendant.

 With respect to the fourth and final factor, plaintiffs assert they would not be opposed to

the possibility of a continuance.  But a continuance could not cure the prejudice caused to

defendant by needing to re-depose plaintiffs, and depose for the first time the newly added

parties, and expend further funds in defending against a new claim for which plaintiff has not

provided a satisfactory explanation to show the claim could not have been earlier asserted.

 In sum, from the present record, the Court concludes plaintiffs have failed to demonstrate

good cause for extending the expired deadline because they offer no explanation for their late

motion, provide no information to demonstrate the importance of extending the expired deadline

as it relates to their proposed amendments, and did not address defendant's arguments that

amending at this date would prejudice defendant (other than asserting defendant would not be

prejudiced because defendant received an interrogatory on the new claim and defendant agreed to

---

[93]  Docket no. 45 at 4.

present its president for a second deposition).[94]  Plaintiffs' conclusory assertions of good cause

are insufficient to show the delay was excusable.  Because plaintiffs have not demonstrated good

cause for amending the scheduling order pursuant to Rule 16(b), this order does not further

address Rule 15(a).  Therefore, plaintiffs' motion for leave to file their first amended complaint

and join additional plaintiffs is **denied**.

## B.      Plaintiffs' Motion for Summary Judgment

### 1.      summary of undisputed facts

The following statement of facts is taken from plaintiffs' motion for summary judgment.

Unless otherwise indicated, defendant does not dispute the factual statements.  Defendant is a

Texas limited liability company doing business as Tiffany's Cabaret.[95]  Defendant features

performances by exotic dancers who perform two types of dances: stage dances in front of the

full audience and table dances for individual patrons.[96]  It appears undisputed that a table dance

fee is the minimum charge or price set by defendant for a table dance, the amount of which varies

depending on the time of day.[97]  A table dance during the "a.m. shift" (11:00 am to 7:00 pm) will

---

[94]  Defendant's objection to the proposed amendment, based on the arguments presented and the procedural context, is important to the ruling as defendant is presumed to understand the Court's determination that plaintiffs' did not meet their burden to file a first amended complaint does not speak to whether the proposed opt-in plaintiffs can file a separate suit.  The ruling is made with express deference to the District Judge's assessment, after the filing of any objections; as intimated by the rule discussed in <u>Sperling</u>, the District Court has a strong interest in having only one trial on all related claims.

[95]  Docket no. 32 at 1.  <u>See also</u> docket no. 1 at 3; docket no. 8 at 4.

[96]  Docket no. 32, exhibit C, Condrin Dep. at 14; docket no. 55, exhibit 5, Alex Dep. at 59.

[97]  Docket no. 32, exhibit C, Condrin Dep. at 27; docket no. 55, exhibit 5, Alex Dep. at 66-67.

cost a customer $5.00, while a table dance during the "p.m. shift" (7:00 pm to 2:00 am) will cost a customer $10.00.[98]  Defendant argues this minimum table dance fee does not include any tip the customer chooses to voluntarily give to the dancer for the table dance.[99]

Allegedly, defendant employed Ms. Alex as a dancer from approximately the year 2010 to August 2013,[100] and Ms. Prieto, also as a dancer, from March 2008 to August 2013.[101]  Alex alleges she worked twenty to fifty hours a week, but typically worked forty hours each week.[102]  Prieto alleges she worked forty to fifty hours a week.[103]  Plaintiffs allege they were not paid the minimum wage under the FLSA, or overtime wages for hours worked over forty in a workweek.[104]  Plaintiffs also contend their tips were misappropriated because defendant does not take a tip credit against plaintiffs' hourly rate and defendant required plaintiffs to contribute to an invalid tip pool, in violation of the FLSA.[105]

---

[98]  Docket no. 32, exhibit C, Condrin Dep. at 27-28; docket no. 55, exhibit 4, Eidson Dep. at 29-31, 37-38.

[99]  Docket no. 32, exhibit C, Condrin Dep. at 48; docket no. 55, exhibit 5, Alex Dep. at 67, 72.

[100]  Docket no. 32 at 4, and exhibit A, Alex Dep. at 28, 55.  See also docket no. 1 at 1; docket no. 8 at 5 ("Defendant admits only that Plaintiffs have worked at Tiffany's Cabaret as exotic dancers since sometime in 2010.").

[101]  Docket no. 32 at 5, and exhibit B, Prieto Dep. at 13.  See also docket no. 1 at 1; docket no. 8 at 5 ("Defendant admits only that Plaintiffs have worked at Tiffany's Cabaret as exotic dancers since sometime in 2010.").

[102]  Docket no. 32 at 5; docket no. 55 at 6-7, and n.11.

[103]  Docket no. 32 at 5; docket no. 55 at 7.

[104]  Docket no. 32 at 5.  See also docket no. 1 at 5-6; docket no. 8 at 6.

[105]  Docket no. 32 at 6.  See also docket no. 1 at 6; docket no. 8 at 6.

2.      **summary of arguments**

   a.      **plaintiffs' motion**

In their summary judgment motion, plaintiffs seek summary judgment on "liability, Defendant's good faith defense and willfulness as it applies to the FLSA."[106]  Specifically, plaintiffs request summary judgment on three issues: (1) the table dance fees at Tiffany's Cabaret are tips, not service charges under the FLSA, therefore defendant cannot rely on table dance fees to satisfy its obligations under the FLSA; (2) defendant does not have a good faith basis for how it compensated plaintiffs, therefore plaintiffs are entitled to liquidated damages; and (3) defendant willfully violated the FLSA, therefore a three-year statute of limitations applies and plaintiffs are entitled to recover damages from August 14, 2010 forward.[107]

First, plaintiffs argue the table dance fees at Tiffany's Cabaret are tips and not service charges.[108]  Plaintiffs identify a number of factors that support their conclusion that the table dance fees are not service charges; specifically, plaintiffs contend defendant failed to "report all table dance fees as gross receipts,"[109] defendant failed to track the actual number of table dances performed by each performer, defendant failed to track the amount received for each table dance by each performer, and defendant did not distribute table dance fees to the performers, instead, club patrons paid the performers directly.[110]  Further, plaintiffs argue defendant did not fail to

---

[106]  Docket no. 32 at 2.

[107]  Id.

[108]  Id. at 10.

[109]  Id. at 15.

[110]  Id. at 15-16.

track its alcohol sales and the hours worked by "non-dancer" hourly employees.[111]  In support, plaintiffs submit copies of court decisions as exhibits,[112] primarily discussing in their motion two cases: <u>Reich v. Priba Corp.</u> and <u>Hart v. Rick's Cabaret International, Inc.</u>[113]

Second, plaintiffs argue they are "entitled to the FLSA's three-year statute of limitations."[114]  Plaintiffs assert defendant willfully violated the FLSA because defendant had "specific knowledge of the FLSA, but ignored it showing reckless and intentional disregard."[115]  Specifically, plaintiffs contend Timothy Eidson, president of KHG of San Antonio, L.L.C., "attended a seminar during 1995/1996 concerning the 'Hensley Method' where he was told about the FLSA and how it applied to compensation of exotic dancers."[116]  Plaintiffs assert Mr. Eidson failed to verify the information he received from the seminar was accurate, he failed to seek legal help or advice from the Department of Labor, and "he did not perform any research or due diligence."[117]  Further, plaintiffs argue defendant "knew its failure to track the dancers actual work hours were 'red flags,' but instead chose to disregard it to save money."[118]

Third, plaintiffs contend they are entitled to liquidated damages because defendant did

---

[111] <u>Id.</u> at 15.

[112] <u>See</u> note 22, <u>supra</u>.

[113] Docket no. 32, exhibit G (<u>Reich v. Priba Corp.</u>, 890 F.Supp. 586) and exhibit H (<u>Hart</u>, No. 09-civ-3043, 2013 WL 4822199).

[114] <u>Id.</u> at 16.

[115] <u>Id.</u> at 17.

[116] <u>Id.</u> at 18.

[117] <u>Id.</u>

[118] <u>Id.</u> at 19.

not act in good faith. Specifically, plaintiffs argue defendant "did not act with a reasonable belief that its actions complied with the law," and if defendant's actions are willful, "then it could not have acted in 'good faith.'"[119]

**b.    defendant's response**

In response, defendant argues plaintiffs are not entitled to summary judgment on their FLSA claims because "they have received wages, in the form of both semi-monthly pay checks and retained service charges, which meet or exceed the minimum wage obligations as well as any overtime wages."[120] Defendant asserts that, in addition to receiving a semi-monthly paycheck, plaintiffs retain all table dance fees. Defendant argues the table dance fees are service charges, not tips, because (1) the table dance fees "are paid by customers who receive personal dances" from the entertainers; (2) the table dance fee is an amount set by defendant for the service; (3) the table dance fee is not voluntary; (4) the table dance fees are not regarded as the entertainer's property, but are instead KHG's property which it allows its entertainers to collect;" (5) the table dance fee is "generally understood to be the required amount customers pay for such services;" and (6) the table dance fees are included in defendant's gross receipts.[121] Defendant distinguishes Hart and Priba Corp., arguing that, unlike the defendant in Hart, it takes the table dance fees into its gross receipts, and, unlike the parties in Priba Corp., neither party here intended the table

---

[119]   Id. at 19-20.

[120]   Docket no. 55 at 1.

[121]   Id. at 5.

dance fees to be considered tips.[122]

Further, defendant argues "the pay checks and service charges entertainers collect and keep . . . exceed the minimum wage for each hour Plaintiffs worked, and Plaintiffs are also sufficiently compensated to cover the overtime hours they claim to have worked."[123]  Defendant asserts Alex stated she worked "'anywhere from 20 and 50 hours [per week]' but usually worked only 40 hours per week," and earned "between $500.00 and $1,000.00 per week in table-side dance fees."[124]  Defendant argues that, assuming Alex worked fifty hours in a given workweek, Alex earned, on average, between $10.00 and $20.00 per hour in table dance fees, an amount that exceeds the federal minimum wage and does not include Alex's semi-monthly paychecks or any tips received.[125]  Regarding overtime compensation, defendant contends that, again assuming Alex worked fifty hours in a given workweek, it would only be obligated to pay Alex $108.75 for ten overtime hours, but "Alex admits to earning $500 to $1,000 per week in table-side dance fees."[126]  With respect to any minimum wage or overtime violations alleged by Prieto, defendant contends "Prieto earned between $1,000 and $1,200 (net of expenses) per week," and she worked

---

[122] Id. at 5-6 (citing Reich v. Priba Corp., 890 F.Supp. 586; Hart, No. 09-civ-3043, 2013 WL 4822199).

[123] Id. at 6.

[124] Id. at 6-7 (citing exhibit 5, Alex Dep. at 112-113, 147-148 and exhibit 8, Alex's answers and objections to defendant's first set of interrogatories at 9).

[125] Id. at 7

[126] Id.  Defendant's formula for determining the potential amount owed on any alleged overtime hours worked is "$7.25/hour x 10 overtime hours x 1.5 overtime premium, or $108.75." Id.

"between 40-50 hours per week."[127]   Assuming Prieto worked fifty hours in any given workweek, defendant asserts Prieto earned "between $20 and $24 per hour—significantly more than the federal minimum wage" and more than defendant asserts it was required to pay Prieto "even when applying the overtime premium to the federal minimum wage of $7.25/hour for the 10 overtime hours per week she claims to have worked."[128]

Next, defendant argues plaintiffs are not entitled to summary judgment on whether defendant willfully violated the FLSA because "genuine issues of disputed material fact exists as to whether [defendant] showed reckless disregard for its obligations under the FLSA."[129] Specifically, defendant contends it "has never been previously sued for alleged FLSA violations," and prior to "the filing of this civil action, no entertainer had ever complained to it about any alleged failure to pay entertainers the minimum wage or overtime wages."[130]   Further, defendant argues its' president, Eidson, "attended a three-day seminar on the FLSA," and "the FLSA-compliant compensation method, known as the 'Hensley Method' was in place at Tiffany's Cabaret" when it was purchased.[131]   Defendant asserts it installed a software program, called "Table Dance Manager," "to track what shifts each dancer worked and to track how many table-side dances each performed," and, although defendant admits it did not preserve entertainer timesheets prior to 2014, defendant argues it "historically (and currently) tracks the time

---

[127]  Id. (citing exhibit 6, Prieto Dep. at 29, 58).

[128]  Id.

[129]  Id. at 10.

[130]  Id.

[131]  Id.

entertainers sign-in and sign-out."[132]

Finally, defendant argues "[p]laintiffs are not entitled to summary judgment on the issue of whether or not [it] acted in good faith because genuine issues of disputed fact exist regarding whether [defendant] had reasonable grounds to believe its compensation system complied with the FLSA."[133]   Defendant asserts "[o]nly if Plaintiffs prevail on any award of actual damages, should the Court then apply the 'good faith' analysis."[134]   Defendant argues Eidson "believed he was purchasing a turn-key business which already had implemented a 'lawyer-approved.' FLSA-compliant method of compensating its entertainers."[135]   Defendant further asserts Eidson understood "that the Hensley method of compensating dancers did track table-side dances and entertainers' hours worked," and Eidson "only recently learned (in this litigation) that the software KHG uses to implement the Hensley method as only tracking the number of shifts, and not the actual hours entertainers worked."[136]   "The Table Dance Manager software tracks only the shifts each entertainer works, and the number of table dances performed, but does not capture the specific time of day each entertainer arrives and leaves the club."[137]   Defendant contends there are two daily shifts for entertainers—"the 'a.m. shift' (11:00 a.m. to 7:00 p.m.) and the 'p.m.

---

[132]   Id.

[133]   Id. at 11.

[134]   Id. at 11 (citing Vallejo v. N.E. Indep. Sch. Dist., No. SA-12-CA-270, 2013 WL 3050484 (W.D. Tex. June 17, 2013)).

[135]   Id. at 12 (citing exhibit 4, Eidson Dep. at 24-25, 49).

[136]   Id. (citing exhibit 4, Eidson Dep. at 29-31, 37-38).

[137]   Id. at 13 (citing exhibit 4, Eidson Dep. at 32-33; exhibit 3, Condrin Dep. at 21-22, 24-26).

shift' (7:00 p.m. to 2:00 a.m. the next day)."[138]

In support of defendant's contention that it acted in good faith, defendant argues it "attempted to ensure compliance with the FLSA," by (1) having Eidson attend an FLSA compliance seminar, (2) hiring Anderson's accounting firm to run the Table Dance Manager software, (3) issuing semi-monthly paychecks to the entertainers, and withholding taxes from their wages, (4) allowing "entertainers to collect and keep house-set service charges in the form of table-side dance fees," (5) tracking table dance fees and taking the table dance fees "into its gross income," (6) "having a reasonable belief that entertainers make at least $250 per shift, most of which is from house-set table-side dance fees," and (7) "having knowledge that entertainers do not work more than 40 hours in any given workweek."[139]  Further, defendant argues "Plaintiffs each admitted that they earned more than the minimum wage from performing for KHG."[140]

### c.  plaintiffs' reply

Plaintiffs filed a reply in support of their motion, arguing in sum, "the table dance fees in this case were tips, which cannot be used by [defendant] to satisfy or be credited against its minimum wage and overtime obligations,"[141] and, plaintiffs are entitled to summary judgment on the issues of defendants' liability, willfulness, and good faith.  First, plaintiffs deny "earning 'wages' which satisfy or exceed the federally mandated minimum wage and/or overtime

---

[138]  Id. (citing exhibit 4, Eidson Dep. at 31-32).

[139]  Id. at 13-14 (citing exhibit 3, Condrin Dep. at 17-18, 21-22; exhibit 4, Edison Dep. at 39-40, 43, 45-47, 54-55, 63, 68, 73; exhibit 5, Alex Dep. at 59-60, 65-68).

[140]  Id. at 14 (citing exhibit 5, Alex Dep. at 69-73, 77, 87-88, 112-113, 139-140, 147; exhibit 6, Prieto Dep. at 29, 42, 58).

[141]  Docket no. 64 at 2.

premium."[142]  Plaintiffs contend "Defendant wrongly assumes that the 'tips' Plaintiffs testified receiving were 'service charges.'"[143]  Plaintiffs argue the table dance fees cannot constitute a service charge and be applied against defendant's minimum wage obligation because defendant "failed to fully report all table dance fees as gross receipts because it failed to keep track of the actual number of table dances."[144]  Further, plaintiffs argue "that a subset of the performance fees happened to have been recorded by [defendant] does not alter their essential character."[145]  Plaintiffs assert "the few pay stubs/wages Defendant can point to can only go to the question of damages."[146]

Second, plaintiffs argue they are "entitled to the a [sic] three-year statute of limitations."[147]  Plaintiffs assert "[d]efendant willfully violated the FLSA," because, defendant "fails to submit any evidence of an actual 'attorney approved' seminar," defendant "failed to perform any due diligence after attending a seminar nearly twenty (20) years ago," and defendant "intentionally violated the FLSA when it chose to forego a time keeping system for its dancers."[148]

---

[142] Id. at 4.

[143] Id.

[144] Id. at 5 (citing docket no. 32, exhibit D, Anderson Dep. at 45, 51, 59, 61).

[145] Id. at 5-6 (citing Hart, No. 09-civ-3043, 2013 WL 4822199).

[146] Id. at 7.

[147] Id.

[148] Id. at 8.

Third, plaintiffs argue they "are entitled to full liquidated damages."[149]  Plaintiffs assert that, "[t]o satisfy the good faith requirement, an employer must show that it acted with both subjective and objective good faith," and defendant cannot satisfy either prong.[150]  In support, plaintiffs contend (1) Eidson "cannot himself explain why the club is FLSA compliant;"[151] (2) defendant "has failed to submit any evidence regarding the 'lawyer approved seminar' it attended" in the mid-1990's;[152] and (3) John Anderson, "whom [defendant] relied upon for FLSA purposes, testified that he did not remember taking an FLSA course since the 1980's" and defendant "did not ask [Anderson] regarding FLSA compliance until this lawsuit was filed."[153]

**3.      analysis**

   **a.    minimum wage and overtime pay**

      **i.      general standard**

The FLSA guarantees a minimum wage that must be paid by employers to each of its employees "who in a workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce."[154]  Further, "[t]he FLSA establishes the general rule that employees must receive overtime compensation at one and one-half times the regular rate for hours worked in excess of

---

[149]  Id. at 9.

[150]  Id. at 9-10.

[151]  Id. at 10 (citing docket no. 32, exhibit E, Eidson Dep. at 19-26).

[152]  Id.

[153]  Id. (citing attached exhibit O, Anderson Dep. at 11-13, 26).

[154]  29 U.S.C. § 206 (a)(1)(c).

40 hours during a seven-day workweek."[155]

      ii.    **record-keeping**

As a threshold matter, "[a]n employee bringing an action pursuant to the FLSA, based on [unpaid minimum wages and] unpaid overtime compensation, must first demonstrate that she has performed work for which she alleges she was not compensated."[156]  But, the burden should not be construed as "an impossible hurdle for the employee."[157]  Rather, an employee has met the requisite burden of proof if "he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[158]  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence."[159]

Plaintiffs argue they "were not paid an hourly wage, a salary or any type of wage by Tiffany's for work performed at its gentlemen's club."[160]  In support of their motion for summary

---

    [155] Gallegos v. Equity Title Co. of Am., 484 F.Supp.2d 589, 593 (W.D. Tex. 2007) (Biery, J.) (adopting Magistrate Judge Primomo's report which cited 29 U.S.C. § 207(a)).

    [156] Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 441 (5th Cir. 2005) (citing Anderson v. Mount Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192 (1946)).

    [157] Anderson, 328 U.S. at 687, 66 S.Ct. at 1192.

    [158] Id.

    [159] Von Friewalde v. Boeing Aerospace Ops., Inc., 339 Fed. App'x 448, 455 (5th Cir. 2009) (quoting Anderson, 328 U.S. at 687-88, 66 S.Ct. at 1192).

    [160] Docket no. 32 at 2.

judgment, plaintiffs provide their deposition testimony wherein Prieto states she worked 40-50 hours each week,[161] and Alex states she worked anywhere from 20-50 hours each work, but averaged 40 hours per week.[162]  Plaintiffs also submit copies of Alex's 2012 W-2 form,[163] listing "wages, tips, other compensation" at $1975.00, and Prieto's 2011 and 2012 W-2 forms, listing "wages, tips, other compensation" at $1740.00 and $2945.00, respectively.[164]  Plaintiffs do not provide any other evidence of hours worked or wages earned.

Defendant, in response, provides copies of Alex's payroll stubs, dating from August 5, 2012 through August 2013, with several time gaps between the payroll stubs provided.[165]  Each of Alex's pay stubs lists an amount of money as a "table dance draw."[166]  Defendant also submits Alex's responses to defendant's first set of interrogatories in which Alex states she earned $500.00 to $1,000.00 per week;[167] Prieto's deposition testimony stating she earned between $1,000.00 and $1,200.00 per week;[168] and Alex's deposition testimony stating she received a

---

[161]  Docket no. 32, exhibit B, Prieto Dep. at 29.

[162]  Id., exhibit A, Alex Dep. at 112-13.

[163]  Docket no. 33, exhibit F at 1.

[164]  Id. at 2-3.

[165]  Docket no. 55, exhibit 2.

[166]  See id.

[167]  Docket no. 55, exhibit 8, Alex's answers and objections to defendant's first set of interrogatories at 9, ¶ 15.

[168]  Docket no. 55, exhibit 6, Prieto Dep. at 58.  Plaintiffs contend these earnings were tips, docket no. 64 at 4, but plaintiffs' W-2 forms, submitted by plaintiffs and listing "wages, tips, other compensation," do not reflect amounts anywhere near the amounts stated by plaintiffs in response to defendant's interrogatories.  See docket no. 33, exhibit F.

paycheck from defendant every two weeks[169] and earned "on average, anywhere from 150 to 250" each night in "mostly table dance fees."[170]  Therefore, defendant has met its burden to come forward with evidence to negate the reasonableness of the inference to be drawn from plaintiffs' evidence; defendant submitted evidence establishing it did pay plaintiffs some wages, contrary to plaintiffs' claim that defendant did not pay "an hourly wage, a salary or any type of wage."[171]

Both parties submit the deposition testimony of John Anderson, one of defendant's corporate representatives, who stated defendant did not keep a record of hours worked by its dancer-employees.[172]  Instead, defendant kept a record of shifts worked by each dancer.[173]  Specifically, defendant uses a software program called Table Dance Manager that tracks whether a dancer worked a shift and estimates the number of table dances performed, and the amount of table dance fees earned, during the shift.[174]  These records were not submitted with any pleading related to the motion for summary judgment, nor with any other pleading filed of record in CM/ECF.

---

[169]  Docket no. 55, exhibit 5, Alex Dep. at 60.

[170]  Id., Alex Dep. at 69.

[171]  Docket no. 32 at 2.

[172]  Docket no. 32, exhibit D, Anderson Dep. at 8-10; docket no. 55, exhibit 1, Anderson Dep. at 16, 25.

[173]  See United States Dep't of Labor v. Cole Enters., Inc., 62 F.3d 775, 779 (6th Cir. 1995) (holding where employer had instructed employees to record only scheduled shift hours on their time sheets, not their actual hours worked, the burden of proof shifted to the employer to show that it paid minimum wage for all hours worked).

[174]  Docket no. 32, exhibit D, Anderson Dep. at 8-10, 15-17; docket no. 55, exhibit 1, Anderson Dep. at 16, 25, 59.

Regarding plaintiffs' earnings, the parties contest the status of the table dance fees. Plaintiffs contend the table dance fees are tips. Defendant contends the table dance fees are service charges used to offset its obligations under the FLSA, and provides selected payroll stubs showing a "table dance draw."[175] Therefore, there are genuine issues of material fact as to the number of shifts plaintiffs worked (from which the Court could determine whether plaintiffs were paid the minimum wage or any overtime under the FLSA), and whether the table dance fees are service charges or tips.

### iii. table dance fees

The question of defendant's liability turns on the resolution of whether the table dance fee can be properly classified as either a tip or a service charge. "An employer may offset the full amount of a service charge against its minimum wage liability, but may offset up to fifty percent of all tips received if: (i) the employer has informed the employees of this tip credit provision; and (ii) tipped employees retain all tips received except for those tips included in a tipping pool among employees who customarily receive tips."[176] Plaintiffs argue the table dance fees are tips and, because defendant did not inform plaintiffs of the tip credit provision and required plaintiffs to contribute to a tipping pool which included employees who do not regularly and customarily receive tips, defendant may not use tips to offset its minimum wage and overtime obligations under the FLSA. Defendant counters that the table dance fees are service charges which can be used to satisfy its obligations under the FLSA because, in sum, defendant sets the amount of the

---

[175] Docket no. 55, exhibit 2.

[176] Reich v. ABC/York-Estes Corp., No. 91-C-6265, 1997 WL 264379, at *4 (citing 29 U.S.C. § 203(m)). See docket no. 32, exhibit I.

table dance fee, it is understood that fee is the property of defendant, and defendant includes the

table dance fees in its gross receipts.

Department of Labor ("DOL") regulations define the term "tip" as:

A tip is a sum of money presented by a customer as a gift or gratuity in recognition of some service performed for him.  It is to be distinguished from a payment of a charge, if any, made for the service.  Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity.[177]

The DOL regulations further provide that:

(a) A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t).  Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.

(b) As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for purposes of the Act.  Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the Act.[178]

Plaintiffs cite to several cases to support their claim that the table dance fees are tips, not service

charges.  In ABC/York-Estes, the Northern District of Illinois determined that, "where there is

nothing in the record . . . reflecting that the table dance fees were part of defendants' gross

receipts," "the table dance fees are more closely related to a tip than a service charge."[179]  In Priba

Corp., following a trial, the Northern District of Texas entered findings of fact and conclusions of

---

[177]  29 C.F.R. § 531.52 (2011).

[178]  29 C.F.R. § 531.55 (2011).

[179]  Reich v. ABC/York-Estes Corp., No. 91-C-6265, 1997 WL 264379, at *4, *6.  See docket no. 32, exhibit I.

law, finding "entertainers [kept] 100% of all cash tips received without any accounting to

[defendant]," and "[i]f a patron use[d] the voucher system to tip the entertainer, [defendant] only

credit[ed] 20% of the value of the voucher to gross receipts;" and concluding "[t]he fact that all

of the table dance fees are not reported as gross receipts is fatal to [defendant's] claim that the

tips are more properly classified as wages."[180]  In classifying "the fees the entertainers receive[d]

for table and stage dances," the <u>Priba Corp.</u> court further stated "[i]t is clear from the evidence

presented at trial that the money entertainers received for performing . . . belonged to them and

not to the club;" specifically, both parties "clearly intended" the fees would belong to the

entertainers and defendant would have no ownership interest.[181]  In <u>Thornton v. Crazy Horse,

Inc.</u>, following a four-day bench trial, the District of Alaska entered findings of fact and

conclusions of law, concluding the table dance fees were tips which could not be used to offset

defendant's minimum wage obligation.[182]  In reaching that conclusion, the District of Alaska

relied on six factors:

> (a) whether the payment was made by a customer who has received a personal
> service; (b) whether the payment was made voluntarily in an amount and to a
> person designated by the customer; (c) whether the tip is regarded as the
> employee's property; (d) the method of distributing payment; (e) the customer's
> understanding of the payment; and (f) whether the employer included the payment
> in its gross receipts.[183]

The District of Alaska concluded the table dance fees were tips because "the payments were

---

[180]  <u>Reich v. Priba Corp.</u>, 890 F.Supp. at 594-95.  <u>See</u> docket no. 32, exhibit G.

[181]  <u>Reich v. Priba Corp.</u>, 890 F.Supp. at 594-95.

[182]  <u>Thornton</u>, No. 3:06-cv-251, 2012 WL 2175753, at *1.  <u>See</u> docket no. 32, exhibit J.

[183]  <u>Thornton</u>, No. 3:06-cv-251, 2012 WL 2175753, at *9.

made by customers who had received personal services, were regarded as the dancers' property, were paid directly from the customer to the dancer and kept by the dancer, were not included in the clubs' gross receipts, and were referred to and treated as 'tips' by the parties."[184]  In Hart v. Rick's Cabaret International, Inc., on cross-motions for summary judgment, the Southern District of New York adopted the reasoning in Priba Corp., Thornton, and ABC/York-Estes, and determined the performance fees were not service charges because the performance fees were not recorded in gross receipts, "the performance fees included direct cash payments by customers to the dancers, which were of varying size and were completely unrecorded by Rick's NY in any form," the performance fees "were understood by Rick's to be the property of the dancers," and "the performance fees were paid directly by the customer to the dancer."[185]

The present action is distinguishable from the cases on which plaintiffs rely.  Defendant provides deposition testimony that table dance fees are taken into its gross receipts.[186]  Defendant also provides excerpts of Condrin's deposition in which Condrin testifies that the table dance fee is an amount set by defendant.[187]  Unlike Priba Corp. and Thornton, there is some evidence the table dance fees are understood to be defendant's property, that is retained by plaintiffs, and is

---

[184]  Thornton, No. 3:06-cv-251, 2012 WL 2175753, at *10.

[185]  Hart, No. 09-civ-3043, 2013 WL 4822199, at *19-26 and *25, n.12 (noting three cases where the court reached the conclusion the performance fees at issue were service charges under the FLSA).  See docket no. 32, exhibit H.

[186]  Docket no. 55, exhibit 1, Anderson Dep. at 50.

[187]  Id., exhibit 3, Condrin Dep. at 47.  See also id., exhibit 5, Alex Dep. at 67 (plaintiff had no input on how much to charge for a table dance).

used to offset defendant's minimum wage obligations.[188]  Moreover, defendant provides Alex's

payroll stubs, which, while incomplete, each reflect a "table dance draw."[189]  Anderson testifies

this table dance draw is the amount plaintiff retains, in cash, to offset defendant's minimum wage

obligation under the FLSA.[190]  Further, unlike the situation in Hart, there is no evidence that

defendant does not include the table dance fees in its gross receipts.

The parties rely on the same deposition testimony, and present conflicts in the deposition

testimony.  At the summary judgment stage, "[i]n determining whether there is a dispute

regarding a material fact, [the Court] consider[s] all the evidence in the record but [does] not

make credibility determinations or weigh the evidence."[191]  Therefore, there is a genuine issue of

material fact whether the table dance fees are tips or service charges—and, accordingly, whether

or not defendant paid plaintiffs the minimum wage under the FLSA.

### b.    tip misappropriation

The FLSA permits an employer to treat an employee's tips as wages for purposes of

meeting its obligations to pay the minimum wage only where the employee is a "tipped

employee," as defined in § 203(t), and only to the extent provided in § 203(m), which requires,

among other things, that an employer inform employees of the provisions of that subsection.

---

[188]  Id., exhibit 4, Eidson Dep. at 28.  See also id., exhibit 5, Alex Dep. at 67, 69, 72
(plaintiff appears to distinguish between table dance fees and tips).

[189]  Id., exhibit 2.

[190]  Id., exhibit 1, Anderson Dep. at 44, 54.

[191]  MAN Roland, Inc. v. Kreitz Motor Express, Inc., 438 F.3d 476, 478-79 (5th Cir.
2006) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097,
2110 (2000)).

Plaintiffs contend they were required to "tip-out" the house mother and deejay at the end of their shifts.  Plaintiffs argue this was an invalid tip pool because the house mother and deejay do not regularly and customarily receive tips.  Defendant submits deposition testimony to show there is no policy requiring dancers to tip the house mother and deejay.  Condrin states it is not a requirement, and he does not force dancers to tip the house mother or deejay.[192]  Eidson testifies defendant does not have a policy requiring dancers to tip either the house mother or the deejay.[193]  In his deposition, Anderson states he understood that "tipping-out" the house mother or deejay was not required.[194]

On a motion for summary judgment, on the question of liability for an alleged FLSA violation, the burden of proof is on plaintiffs to establish a violation; the burden then shifts to defendant to refute the violation.  Here, plaintiffs have provided their own deposition testimony,[195] which defendant refuted with testimony from Condrin, Anderson, and Eidson.  Thus, because the Court does not weigh evidence and determine credibility on a motion for summary judgment, there appears to be a disputed question of material fact on the issue of defendant's liability on plaintiffs' claim of tip misappropriation.[196]

---

[192]   Docket no. 55, exhibit 3, Condrin Dep. at 40.

[193]   Id., exhibit 4, Eidson Dep. at 78-79.

[194]   Docket no. 55, exhibit 1, Anderson Dep. at 24.

[195]   Docket no. 23, exhibit A, Alex Dep. at 118-119, exhibit B, Prieto Dep. at 32-33.

[196]   MAN Roland, Inc., 438 F.3d at 478-79 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 150, 120 S.Ct. at 2110).

### c.    willfulness

The FLSA has a two-year limitations period.[197]  The limitations period extends to three years for willful violations.[198]  Under the FLSA, a violation is "willful" if the employer either "knew or showed reckless disregard for . . . whether its conduct was prohibited by statute."[199] The burden of showing that an FLSA violation was "willful" falls on the plaintiff.[200]  Plaintiffs' evidence of willfulness includes Eidson's testimony that he attended a 3-day FLSA compliance seminar in 1995 or 1996,[201] and Anderson's testimony that defendant's "failure to track the dancers' actual work hours were 'red flags.'"[202]

Plaintiffs argue defendant acted in "reckless disregard" of its non-compliance with the FLSA because it failed to consult an attorney, "did not seek advice from the DOL," and "did not perform any research or due diligence."[203]  "But this inaction, standing alone, is insufficient to demonstrate that [defendant] acted willfully in violating the FLSA."[204]  Further, establishing that an employer was negligent with respect to its statutory requirements under the FLSA, such as by

---

[197]  29 U.S.C. § 255(a).

[198]  Id.

[199]  Singer v. City of Waco, Tex., 324 F.3d 813, 821 (5th Cir. 2003) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681 (1988)).

[200]  Samson v. Apollo Res., Inc., 242 F.3d 629, 636 (5th Cir. 2001); Mohammadi v. Nwabuisi, No. 5:12-cv-042, 2013 WL 1966746, at *13 (W.D. Tex. May 10, 2013).

[201]  Docket no. 32 at 18 (citing exhibit E, Eidson Dep. at 19-26).

[202]  Id. at 19 (citing exhibit D, Anderson Dep. at 26-29).

[203]  Id. at 18.

[204]  Cantu v. Milberger Landscaping, Inc., No. 5:13-cv-731, 2014 WL 1413528, at *3 (W.D. Tex. Apr. 10, 2014).

failing to keep accurate records of actual hours worked, is generally insufficient to establish willfulness.[205]  In general, to show reckless disregard of the FLSA, plaintiffs must show that defendant had some reason to know its conduct violated the FLSA beyond mere ignorance of the law;[206] for example, if the employer had previously been put on notice that its practices violated the statute.[207]  Here, the summary judgment evidence shows defendant did not do enough to ascertain its FLSA requirements, but it does not show defendant either deliberately or recklessly violated the statute.  Thus, plaintiffs have not met their burden of establishing a willful violation of the FLSA, and, at this time, plaintiffs are entitled only to a two-year limitations period.  But the Court cannot determine at this time that plaintiffs will be unable, as a matter of law, to meet their burden on this point.  Therefore, the issue of willfulness is a material fact question.

### d.     good faith defense

The FLSA provides for an award of liquidated damages in the amount of unpaid minimum wages and unpaid overtime compensation.[208]  A Court must grant liquidated damages unless the employer meets its substantial burden of persuading the Court that its act or omission was both in good faith and reasonable.[209]  "[G]ood faith requires some duty to investigate

---

[205]  Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1416 (5th Cir. 1990) (citing McLaughlin, 486 U.S. at 135, 108 S.Ct. at 1682).

[206]  Id.

[207]  Reich v. Bay, Inc., 23 F.3d 110, 117 (5th Cir. 1994).

[208]  29 U.S.C. § 216(b).

[209]  Singer v. City of Waco, Tex., 324 F.3d at 823.

potential liability under the FLSA."[210]

It is not prudent to rule on the good faith issue at this stage and on this record. First, there has not yet been a finding of any FLSA violation and the Court may not need to decide the issue of good faith. Second, because there are disputed questions of material fact regarding defendant's liability, the Court cannot determine at this time whether defendant acted in bad faith.

### e.    conclusion

In sum, there is a genuine issue of material fact about the nature of the table dance fees, relevant to both the overtime and minimum wage protections afforded by the FLSA, and to whether defendant misappropriated plaintiffs' tips. Plaintiffs have failed to conclusively establish the table dance fees are tips. Therefore, on the present record, plaintiffs have not established violations of the FLSA as a matter of law. Accordingly, plaintiffs' motion for summary judgment on defendant's liability, willfulness, and good faith should be **denied**.

## VI.  ORDER and RECOMMENDATIONS

Based on the foregoing analysis:

- it is **ORDERED** that:

  - plaintiff's motion for leave to file a first amended complaint, joining opt-in plaintiffs,[211] be **DENIED**;

  - plaintiffs' motion for leave to file sealed documents[212] be **GRANTED** and

---

[210]  Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464, 469 (5th Cir. 1979).

[211]  Docket no. 37, exhibit A.  See docket nos. 39, 40, 41, 47, 50, 54, 57, 59, 61, 63, 66, 68.

[212]  Docket no. 33.

plaintiffs' exhibits F and L, attached to the motion, be **sealed**; and

●     it is **RECOMMENDED** that plaintiffs' motion for summary judgment[213] be **DENIED**.

## VII.  INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within **14** days after being served with a copy, unless this time period is modified by the District Court.  A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a *de novo* determination by the District Court.[214]  Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report

---

[213]  Docket no. 32.

[214]  See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472 (1985).

will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the

unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[215]

      **ORDERED, SIGNED** and **ENTERED** this 13th day of June, 2014.

                    **PAMELA A. MATHY**
                    **UNITED STATES MAGISTRATE JUDGE**

---

[215] Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir.1996).